WILLIAM STURGIS, Administrator, &c. *versus*
GEORGE W. SLACUM.

Under the act of Congress of 1792, *c.* 24, empowering consuls of the United States
to take possession of the personal estate left by any citizen of the United States
who shall die within their consulates, and therewith " to pay the debts due from
his estate which he shall have there contracted," a consul is not authorized to pay
a claim, not reduced to a judgment, for damages for a wrongful act committed by
the deceased.

The defendant, who was consul of the United States at Buenos Ayres, being about
to visit the United States, appointed K. acting consul during his absence, but
the chargé d'affaires of the United States at Buenos Ayres refused to recognize
K. as such, and performed the duties of consul himself, until the appointment of
K. was approved by the government of the United States ; and in consequence of
such refusal, K. was prevented from receiving the emoluments of that office for
several months. The chargé d'affaires subsequently died intestate, and the de-
fendant, in pursuance of the act of Congress of 1792, *c.* 24, took possession of his
property, and, having sold it, transmitted to the plaintiff, who was appointed
administrator in this State, an account of the disposition made of it, showing a
balance in favor of the estate, which the defendant claimed to retain on account
of the intestate's refusal to recognize K. as acting consul. It was *held*, that the
defendant, by setting up such claim, ceased to act under that statute ; that he had
no lien on the property for the alleged tort of the intestate ; and that an action at
law might be maintained by the plaintiff against him, in this State, to recover
such balance.

ASSUMPSIT.    The parties stated a case.

In April 1825, John M. Forbes, the plaintiff's intestate,
was appointed chargé d'affaires of the United States to the
government of Buenos Ayres, and continued to reside there as
such until his death in June 1831.   The defendant was ap-
pointed consul of the United States at Buenos Ayres in 1824,
and upon the death of the intestate, under color of his consular
office, took into his possession certain personal property there,
belonging to the intestate, and caused it to be sold by public
auction, the intestate having no legal representative or other
person authorized to take charge of such property, in Buenos
Ayres.   From the proceeds of the sale, the defendant paid
certain debts due from the intestate at Buenos Ayres ; and in
August 1832, stated an account of such payments and of the
proceeds of such sale, showing a balance in favor of the estate
of the deceased, amounting to about 5000 dollars.   The de-
fendant alleged in the account, that he retained this balance in
satisfaction of a claim against the estate of the intestate.   The
account was transmitted to the plaintiff.

Sturgis
*v.*
Slacum.

The claim of the defendant referred to in the account arose from this cause. On October 31st, 1826, the defendant, being about to visit the United States, executed an instrument, whereby, so far as he had authority, he appointed Robert Kortright, a citizen of the United States, then residing at Buenos Ayres, his agent in all matters appertaining to the consular office and acting consul, during the defendant's absence from Buenos Ayres. Kortright accepted the appointment, and the defendant gave notice thereof to the intestate, and requested him, as chargé d'affaires, to recognize Kortright as such acting consul, to present him as such to the government of Buenos Ayres, and to procure his recognition by that government. But the intestate refused to comply with such request.

By this refusal, Kortright was prevented from exercising the duties of that office, and from receiving the income and emoluments thereof, for several months. The government of the United States afterwards approved of the appointment of Kortright by the defendant, as acting consul during his absence from Buenos Ayres ; and the secretary of state of the United States, by a letter, dated February 16th, 1827, gave notice to the intestate of such approval, and directed him to recognize Kortright as acting consul, and to request his recognition by the government of Buenos Ayres. On the receipt of this letter, Kortright was so recognized, and entered on the duties of the office.

The intestate, from October 31st, 1826, until he received the letter from the secretary of state, assumed and performed the duties and functions of such consular office. The defendant had no evidence showing the amount of the income and emoluments of the office during that period ; but he asserted, that they exceeded the balance of the account. There was no evidence that the intestate charged any fees for executing the duties of the office.

Kortright testified in his deposition, taken on the part of the defendant, that there was no agreement between him and the defendant to divide the fees of the office.

If upon these facts the plaintiff was entitled to recover in this action, judgment was to be rendered in his favor for such

Sturgis
v.
Slacum.

March 18th.

damages as the Court should order ; otherwise, judgment was to be rendered for the defendant.

. *C. P. Curtis*, for the plaintiff.

*J. Mason, contrà.* The defendant is not liable in an action at law to this plaintiff. The proceedings should have been in the Probate Court, or by a bill in equity. Under the act of Congress, of 1792, *c.* 24, the defendant became, in fact, the administrator of the intestate. As such he was independent of the administrator in this State, and not subordinate or ancillary to him. There is a total want of privity of contract between the plaintiff and the defendant, and the law will not raise an assumpsit. *Grout* v. *Chamberlin*, 4 Mass. R. 611 ; l Wms. on Executors, 595 ; *Hagthorp* v. *Hook*, 1 Gill & Johns. 270. The power of an administrator is limited to the jurisdiction within which administration is granted. The property in Buenos Ayres did not vest in the administrator here, and could not be interfered with by him. *Goodwin* v. *Jones,* 3 Mass. R. 514 ; *Stevens* v. *Gaylord*, 11 Mass. R. 256 *Hooker* v. *Olmstead*, 6 Pick. 481 ; *Harvey* v. *Richards*, Mason, 381.

March 21st.

WILDE J. delivered the opinion of the Court. This is an action of assumpsit, in which the plaintiff claims to recover a balance in the hands of the defendant, in the capacity of administrator of the goods and estate of John M. Forbes, lately deceased. The intestate was chargé d'affaires of the government of the United States to the government of Buenos Ayres, and died at Buenos Ayres in the year 1831. At that time the defendant was consul of the United States at that port, in the exercise of the duties of that office ; and thereupon took into his possession certain personal property of the deceased, there being, and caused the same to be sold at public auction, and out of the proceeds paid certain debts of the intestate due at Buenos Ayres, and afterwards transmitted an account thereof to the plaintiff, in which he acknowledges a balance in his hands, which he claims to retain on account of a claim he had on the estate of the intestate.

These proceedings are authorized by the act of Congress of the United States, 1792, *c.* 24, § 2.

The defence set up is, that the defendant was, by virtue of

his consular office and such act of Congress, an administrator of the estate of the intestate within the government of Buenos Ayres ; that he is only liable to account in the manner prescribed by statute ; and that he is not amenable to the plaintiff within this jurisdiction, and especially not in an action at law. There can be no doubt that this defence would prevail, if the defendant had been appointed administrator in the usual manner. When there are two or more administrators appointed on the estate of a person deceased, under different governments, they are in no respect accountable to each other ; but each must administer the estate of the deceased within the jurisdiction where he was appointed, and is to account for it to the court from whom he received his appointment. And that court may order distribution according to the laws of the country where the deceased had his domicil at the time of his death ; or may order the balance to be transmitted to the administrator appointed in the country where he had his domicil. Perhaps after such an order of transmission, an action would lie in favor of the principal administrator ; for where any one is under a legal obligation to pay, the law will imply a promise. But however this may be, it is quite clear that without such order no such action could be maintained, the administrations being distinct, and there being no privity between the parties.

We are however of opinion, that the defendant is not to be regarded as an ordinary administrator, but as a receiver or agent appointed by law, and whose duties are prescribed by the statute. These duties in some respects resemble those of ordinary administrators ; but in one respect there is an important difference.

The act provides, that the consuls shall collect the debts due to the deceased in the country where he died, and pay the debts due from his estate which are contracted there ; shall sell the estate and remit the balance remaining in their hands to the treasury of the United States, to be holden in trust fo the legal claimants. But if at any time before such transmis sion, the legal representative of the deceased shall appear anu demand his effects in their hands, they shall deliver them up, being paid their fees, and shall cease their proceedings. If the defendant had complied with the directions of the statute, and

had transmitted the balance in his hands to the treasury, as he was bound to do, he would have been protected by the statute. But as he elected to retain the balance, to answer his own claim, he cannot now defend himself under the statute. After setting up his own claim, he ceased to act under the statute ; and unless his claim was a valid one, he was bound to pay over the balance to the plaintiff, whom he has recognized as the legal representative of the deceased ; and this by the express words of the statute. Ever since transmitting his account to the plaintiff, he has ceased his proceedings under the act of Congress, and the only question now is, whether he has a right to retain the balance to answer his own claim. There is no pretence that there are any remaining debts due in Buenos Ayres, and if there were, the defendant is no longer liable for the payment. Has he then any lien on the money in his hands on account of his own claim ? The general rule is, that a factor has no lien for a general balance in respect of debts which arise prior to the time at which his character of factor commenced. Montague, 35 ; *Houghton* v. *Matthews,* 3 Bos. & Pul. 485. And we perceive no good reason why the same rule should not be applied in the present case. But it is not necessary to decide the present case upon this principle ; for I apprehend it is very clear, that no factor or agent has any general lien in respect to torts. He may retain the balance, to be sure, and suffer himself to be sued, and obtain a set-off through the medium of a cross action ; but he has no lien, and no legal right to retain the money in his hands.

And there is another difficulty. We do not perceive any legal ground on which the defendant's claim can be sustained. Kortright, if any one, was the party injured by the supposed misconduct of the intestate. He would have been entitled to the fees and emoluments of the office in the absence of the defendant, and he testifies, that there was no agreement between him and the defendant to divide the fees. And if there had been such an agreement, the intestate would have been still liable only to Kortright.

But at all events, the defendant cannot retain the balance in his hands on this account. The act of Congress only authorizes him to pay the debts of the intestate contracted in Buenos

Ayres, and not to pay damages for wrongful acts, which, by the principles of the common law, are not recoverable after the death of the tortfeasor.

It appears to us, therefore, that there is no legal ground on which the defence can be maintained ; and according to the agreement of the parties, judgment is to be rendered for the plaintiff.